Opinion issued July 14, 2026



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-26-00267-CR

## NO. 01-26-00269-CR

_____

## IN RE THE STATE OF TEXAS EX REL. SEAN TEARE, HARRIS COUNTY DISTRICT ATTORNEY, Relator

---

## Original Proceeding on Petition for Writ of Mandamus

---

## MEMORANDUM OPINION

Relator, the State of Texas ex rel. Sean Teare, Harris County District Attorney, filed a petition for writ of mandamus related to each of the underlying trial court causes challenging the trial court's January 28, 2026 order granting the "Motion for Early Termination of Community Service" filed by real party in interest, Alejo

David Ahualli.[1] The State's mandamus petition asserted that the trial court's orders granting early termination were "unauthorized and illegal" and that the trial court "has a ministerial duty to rescind" the orders. The State therefore requested that the Court grant its petition and issue a writ of mandamus directing the trial court to "formally rescind [the] unauthorized and illegal order[s] discharging Ahualli from community supervision" in each underlying trial court cause.

The Court requested a response to the State's petition for writ of mandamus, but no response was filed. Because we conclude that the trial court's orders discharging Ahualli from community supervision exceeded the trial court's statutory authority, we conditionally grant the State's petition for writ of mandamus.

## Background

Ahualli was convicted of two separate felony offenses, and, as discussed in more detail below, was placed on community supervision related to each underlying conviction. After serving part, but not all, of his community supervision in each underlying trial court case, Ahualli moved for early termination of his community supervision, which the trial court granted. After denying the State's motion for reconsideration of the trial court's early-termination orders, the State sought mandamus relief from this Court.

---

[1] The underlying cases are *The State of Texas v. Alejo David Ahualli*, Cause Nos. 1635670 and 1750044, in the 177th District Court of Harris County, Texas, the Honorable Emily Detoto presiding.

**1.** **Ahualli is Charged with Felony Offense Aggravated Assault and Placed on Deferred-Adjudication Community Supervision**

On or around July 10, 2019, Ahualli was indicted in trial court case number 1635670 for the felony offense of aggravated assault, with the indictment alleging that, during the commission of the offense, Ahualli "us[ed] and exhibit[ed] a deadly weapon, namely, a firearm."[2] Ahualli entered into a plea agreement with the State in which he pleaded guilty to the offense as charged in exchange for the State's recommendation to the trial court that the trial court defer adjudication of his guilt and place Ahualli on community supervision for a period of five years. On April 2, 2020, the trial court accepted the plea agreement and signed an Order of Deferred Adjudication, placing Ahualli on community supervision for five years.[3] In connection with the Order of Deferred Adjudication, the trial court signed "Conditions of Community Supervision," which required, among other things, that Ahualli was to "[c]omit no offense against the laws of this or any other State or of the United States."

**2.** **Ahualli is Charged with Felony Offense of Aggravated Assault of a Family Member and Placed on Community-Supervision**

During the period that Ahualli was on community supervision, on December 6, 2021, Ahualli was charged by complaint in trial court cause number 1750044 of

---

[2]    *See* TEX. PENAL CODE ANN. § 22.02(a).

[3]    *See* TEX. CODE CRIM. PROC. ANN. art. 42A.102 (outlining eligibility for "deferred adjudication community supervision").

the felony offense of aggravated assault against a family member.[4]  The complaint alleged that, in the commission of the offense, Ahualli "us[ed] and exhibit[ed] a deadly weapon, namely, a firearm."  On December 8, 2021, the State filed a motion to adjudicate guilt in trial court cause number 1635670, alleging that Ahualli violated the terms of his community supervision by, among other things, committing the offense alleged in trial court cause number 1750044.

The trial court granted the State's motion.  After reaching an agreement with the State, on May 11, 2022, Ahualli signed a "Stipulation of Evidence re: State's Motion to Adjudicate Guilt," stipulating that he committed the offense of aggravated assault as alleged in trial court cause number 1750044.  On July 7, 2022, the trial court signed a Judgment of Conviction by Court in trial court cause number 1635670.  In its judgment, the trial court assessed Ahualli's punishment at ten years' confinement, but suspended the sentence, and placed Ahualli on community supervision for a period of five years.[5]  Pursuant to the terms of his community supervision, Ahualli's period of community supervision in trial court cause number 1635670 expired on May 10, 2027.  The trial court's judgment also included a

---

[4]     *See* TEX. PENAL CODE ANN. § 22.02(b)(1)(A).

[5]     *See* TEX. CODE CRIM. PROC. ANN. art. 42A.053(a)(1) (permitting trial court, "in the best interest of justice, the public, and the defendant," to suspend defendant's sentence and "place the defendant on community supervision").

finding that Ahualli "used or exhibited a deadly weapon, namely, [a] firearm, during commission of the felony offense or during immediate flight therefrom."

In trial court cause number 1750044, the trial court signed a Judgment of Conviction by Court on July 7, 2022, assessing Ahualli's punishment at ten years' confinement, but suspended the sentence, and placed Ahualli on community supervision for a period of five years. As with trial court cause number 1635670, the trial court found that Ahualli "used or exhibited a deadly weapon, namely, [a] firearm, during the commission of a felony offense or during immediate flight therefrom." Ahualli's period of community supervision in cause number 1750044 expired on July 6, 2027.

On June 20, 2023, the State filed a motion to revoke Ahualli's community supervision in each of the underlying trial court causes. In its motion, the State alleged that Ahualli "violate[d] terms and conditions" of his community supervision by, among other things, on or around June 13, 2023, "unlawfully commit[ting] the criminal offense of Assault – Family Violence – 2nd Offender." However, on November 16, 2023, the State moved to dismiss its motions to revoke Ahualli's community supervision, stating that the trial court "amended conditions of [Ahualli's] community supervision," pursuant to the trial court's "1st Amended Conditions of Community Supervision" in each underlying trial court cause signed on the same day. Under the amended conditions of community supervision,

5

Ahualli's period of community supervision would end on July 6, 2027 in both underlying trial court causes.

### 3. Ahualli Moves for Early Termination of Community Supervision

On January 28, 2026, Ahualli filed a "Motion for Early Termination of Community Supervision" in each of the underlying trial court causes. In his motions, he stated that he had "been on community supervision for approximately forty-two (42) months and forty-four (44) months, respectively, and ha[d] completed all the requirements of each term of community supervision." He then stated that "the best interests of society and [himself] would be served by an early termination of community supervision." That same day, and prior to the State responding to Ahualli's motions, in each underlying trial court case, the trial court signed an "Order of Early Discharge from Community Supervision (Probation)."

While there are separate orders signed by the trial court for each trial court cause number, the orders are otherwise identical. In its January 28, 2026 orders, the trial court found that Ahualli had "satisfactorily fulfilled the conditions of supervision imposed by the [trial] court," and the trial court had "not proceeded to an adjudication of guilt during the period of supervision." The trial court then ordered Ahualli's "community supervision terminated" and stated that he was "discharged according to law."

On February 5, 2026, the State filed a "Motion to Reconsider" in each underlying trial court cause. In its motions, the State requested that the trial court reconsider the orders discharging Ahualli. In its motion filed in trial court cause number 1635670, the State noted that Ahualli was originally placed on community supervision after the trial court deferred adjudication of his guilt, but that the State filed a motion to adjudicate guilt in that case, alleging that Ahualli violated the conditions of his deferred-adjudication community supervision by committing the offense alleged in trial court cause number 1750044. Ahualli stipulated that he committed the offense, and the trial court signed a Judgment of Conviction by Court, assessing punishment at ten years' confinement, but suspending the sentence, and placing Ahualli on community supervision for five years.

Further, in its motions, the State noted that, in the trial court's Judgment of Conviction by Court in both cases, the trial court included a finding that Ahualli had "used or exhibited a deadly weapon, namely, [a] firearm during the commission of" the felony offenses for which he was convicted. For that reason, the State argued, Ahualli was not eligible for early termination of his community supervision.[6]

---

[6]    *See* TEX. CODE CRIM. PROC. ANN. arts. 42A.701(g)(3) (stating provisions allowing early termination of community supervision do not apply to "defendant convicted of a felony described by Article 42A.054"), 42A.054(b) (placing limitations on availability of community supervision, including to defendants who used or exhibited deadly weapon during commission of a felony).

The State presented its motions to reconsider on February 12, 2026, but the hearing was reset by the trial court to permit Ahualli to file a written response to the State's motions. On March 5, 2026, Ahualli filed his response to the State's motions to reconsider. The trial court also heard the State's motions, orally denied the State's requested relief, and signed orders to that effect on March 5, 2026.

As a result of the trial court's March 5, 2026 orders denying the motions to reconsider the January 28, 2026 early termination orders, the State filed a petition for writ of mandamus related to each underlying trial court cause. The Court requested a response to the petition, but no response was filed. For the reasons discussed below, we conditionally grant the State's petition for writ of mandamus.

**Standard of Review**

"A writ of mandamus is an extraordinary remedy that compels a respondent to perform some ministerial act." *Smith v. Flack*, 728 S.W.2d 784, 792 (Tex. Crim. App. 1987). To establish entitlement to mandamus relief arising out of criminal proceedings, the relator must establish that the act sought to be compelled is ministerial in nature and that there is no adequate remedy in law. *See In re State ex rel. Wice*, 668 S.W.3d 662, 671 (Tex. Crim. App. 2023).

An act is purely ministerial if the relator "can show he has a clear right to the relief sought—that is to say, when the facts and circumstances dictate but one rational decision under unequivocal, well-settled . . . and clearly controlling legal

principles." *Id.* A clear right to relief exists where the "trial court acts beyond the scope of its lawful authority." *Id.* Notably, the fact that an issue may be an issue of first impression does not preclude mandamus relief "when the principle of law is so plainly prescribed as to be free from doubt," specifically, where "the terms of a statute are clear, the Court can address its application." *Id.*

A relator can establish the lack of an adequate remedy at law, even if a potential remedy exists, where that remedy is "so uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective." *See In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013).

**Analysis**

In its petition for writ of mandamus, the State argued that the trial court erred in denying its motions to reconsider the trial court's January 28, 2026 orders discharging Ahualli from his community supervision, because those orders were "unauthorized and illegal." The State asserted that the trial court lacked statutory authority to discharge Ahualli from community supervision, and the "rescission of th[e] order[s] constitute[d] a purely ministerial act." The State therefore requested that this Court issue a writ of mandamus and direct the trial court to rescind its "unauthorized and illegal order discharging Ahualli from community supervision" in each of the underlying trial court causes.

The determination of the State's petition for writ of mandamus will rely on an interpretation of the various statutes relevant to the availability of judge-ordered community supervision, any limitations on a judge's authority to order community supervision, as well as the authority, and limitations on, a judge to grant early termination of a defendant's judge-ordered community supervision. "In construing a statute we focus on its text." *State v. Brent*, 634 S.W.3d 911, 913 (Tex. Crim. App. 2021).

The trial court has statutory authority to suspend a defendant's sentence and order community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.053(a).[7] However, a trial court may not order community supervision where a defendant has been convicted of certain specifically identified offenses, or where the trial court has made certain findings, such as a finding that the defendant used or exhibited a deadly weapon during the commission of a felony offense or in immediate flight from the commission of a felony offense. *See id.* arts. 42A.054(a), (b)(1).[8]

---

[7]    *Id.* art. 42A.053(a) ("A judge, in the best interest of justice, the public, and the defendant, after conviction or a plea of guilty or nolo contendere, may: (1) suspend the imposition of the sentence and place the defendant on community supervision; or (2) impose a fine applicable to the offense and place the defendant on community supervision.").

[8]    *Id.* arts. 42A.054(a) (providing that "Article 42A.053 does not apply to a defendant adjudged guilty of" specifically identified offenses), (b)(1) (providing that "Article 42A.053 does not apply to a defendant when it is shown that" deadly weapon was "used or exhibited" during "commission of a felony offense" or "immediate flight from the commission of a felony offense").

10

A trial court also has statutory authority to reduce or terminate a defendant's community supervision where the defendant has "satisfactorily completed one-third of the original community supervision period or two years of community supervision, whichever is less." *See id.* art. 42A.701(a). Again, however, the statute limits a trial court's authority to reduce or terminate community supervision, stating that the "article does not apply to a defendant convicted of: . . . (3) a felony described by Article 42A.054." *Id.* art. 42A.701(g)(3).

The key statutory language at issue in this original proceeding is found in Texas Code of Criminal Procedure article 42A.701(g)(3), where the Legislature provided that a defendant convicted of "a felony described by Article 42A.054" is not eligible for early termination of community supervision. The question before us is whether that language includes a felony described by article 42A.054(b), which is at issue here—or instead only a felony described by article 42A.054(a), which is not at issue here. Applying the plain language of the statute, we conclude that the language of article 42A.701(g)(3) includes a felony described by both article 42A.054(a) and article 42A.054(b).

This distinction is material in this case. Ahualli filed a motion to terminate his community supervision in both trial court causes, representing to the trial court that he was eligible for termination of community supervision because he had "been on community supervision for approximately forty-two (42) months and forty-four

11

(44) months, respectively, and ha[d] completed all the requirements of each term of community supervision." Therefore, he argued that "the best interests of society and [himself] would be served by an early termination of community supervision." Ahualli filed his motion on January 28, 2026, and on the same day, without a written response or objection from the State, the trial court signed an order in each underlying trial court cause granting Ahualli's motion and terminating his community supervision.

Notably, the statute provides that "[b]efore reducing or terminating a period of community supervision . . . the [trial court] shall notify the attorney representing the [S]tate and the defendant." *See id.* art. 42A.701(c). No evidence in the mandamus record presented to this Court indicates that the State had notice from Ahualli, or the trial court, of the motions or the trial court's intention to grant Ahualli's motions and to terminate his community supervision.

During the hearing on the State's motions to reconsider the orders terminating community supervision, the trial court questioned the need for the motions to reconsider, opining that the State "had a chance to speak up when the motion[s] w[ere] presented, and no one said anything." In response however, the State challenged the trial court's characterization, with the Assistant District Attorney representing that she was "unaware of when that might have taken place," and that she did not "remember being served with [Ahualli's motions to terminate

12

community supervision] or approached on it." She further advised the trial court that she had "spoken to the other two prosecutors assigned to [the trial] court, and they [did not] have any memory of being approached on th[e] case[s]."

Counsel for Ahualli responded that he "spoke with the State," but notably could not recall when or with whom he spoke with from the District Attorney's Office, stating only that he knows "it happened" because it was "just something that [he] automatically always" did. Additionally, the trial court noted that "any time a motion like this is to be considered, [the trial court] always ask[ed] the State for [its] input." Yet, the trial court noted that, in these cases, the trial court did "not mak[e] any notes" to confirm that the State was afforded an opportunity to provide input. Despite that, the trial court concluded that it would not "overturn [the] decision" to terminate Ahualli's community supervision because the trial court would not have granted the request "had all those things not happened."

In its petition for writ of mandamus, the State argued that the trial court erred both in terminating Ahualli's community supervision and denying its motions to reconsider, because article 42A.701 prohibited the trial court from reducing or terminating a defendant's community supervision where that defendant was convicted of "a felony described by Article 42A.054."

As noted above, Texas Code of Criminal Procedure article 42A.054(a) states that a defendant is not eligible for judge-ordered community supervision if the

defendant was adjudged guilty of any of nineteen specifically identified offenses. *See id.* art. 42A.054(a)(1)–(19). Article 42A.054(b) further provides that a defendant is not eligible for judge-ordered community supervision if it was shown that the defendant used or exhibited a deadly weapon during commission of a felony offense or in immediate flight from the commission of a felony offense, and the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. *See id.* art. 42A.054(b).

On this record, there can be no genuine dispute that Ahualli's convictions at issue qualify under article 42A.054(b). In trial court cause number 1635670, Ahualli was convicted, by the trial court, of the felony offense of aggravated assault,[9] and the trial court's judgment of conviction included a finding that Ahualli "used or exhibited a deadly weapon, namely, [a] firearm, during the commission of [the] felony offense or during immediate flight therefrom or was a party to the offense and knew that a deadly weapon would be used or exhibited." Similarly, in trial court cause number 1750044, Ahualli was convicted, by the trial court, of the felony offense of aggravated assault of a family member,[10] and the trial court's judgment of conviction included a finding that Ahualli "used or exhibited a deadly weapon, namely, [a] firearm, during the commission of [the] felony offense or during

---

9    *See* TEX. PENAL CODE ANN. § 22.02(a).

10   *See id.* § 22.02(b)(1)(A).

14

immediate flight therefrom or was a party to the offense and knew that a deadly weapon would be used or exhibited."[11]

Based on the plain language of article 42A.701, the State argued that the trial court's early-termination orders were "illegal" because Ahualli's convictions qualified under article 42A.054(b). In response to the State's motions to reconsider the early-termination orders, Ahualli argued that he was eligible for early termination of his community supervision because "the early-termination restriction [of article 42A.701] applie[d] to the enumerated offenses listed in Article 42A.054(a), not to every felony accompanied by a deadly weapon finding." Ahualli argued that "[i]f the Legislature intended to include every felony affected by Article 42A.054—including any felony accompanied by a deadly-weapon finding—it easily could have used broader language such as 'felonies subject to Article 42A.054' or 'felonies involving a deadly-weapon finding.'" Instead, Ahualli argued, the Legislature "used the narrower phrase 'felony described by Article 42A.054,' which

---

[11]     Although not at issue in this original proceeding, we note that, as addressed by the State in its petition, based on the record presented to this Court, it does not appear that Ahualli was eligible for judge-ordered community supervision in either underlying trial court cause. Given the trial court's findings that Ahualli used or exhibited a deadly weapon during the commission of each of the felony offenses he was convicted of, or in the immediate flight therefore, a plain reading of the statute should have rendered him ineligible for community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.054(b). Therefore, based on the record presented to this Court, it appears that the trial court's judgments and orders of community supervision were in error. *See Ex parte Williams*, 65 S.W.3d 656, 656–57 (Tex. Crim. App. 2001).

15

naturally refer[red] to the specific offenses described in subsection (a) rather than the separate sentencing limitation created by subsection (b)."

He further argued that subsection (b) was distinguishable from subsection (a), which identified specific offenses, because a "deadly weapon finding [was a] sentencing consequence[,] not a distinct offense." However, in reading the full text of subsection (b), the Legislature provided a separate specific class of felony offenses, those accompanied with a deadly weapon finding. The statute provides that:

> (b) Article 42A.053 does not apply to a defendant when it is shown that: (1) a deadly weapon . . . was used or exhibited during the: (A) commission of a felony offense; or (B) immediate flight from the commission of a felony offense; and (2) the defendant: (A) used or exhibited the deadly weapon; or (B) was a party to the offense and knew that a deadly weapon would be used or exhibited."

*Id.* art. 42A.054(b).

To reach Ahualli's suggested statutory interpretation, we would have to either add to, or subtract from, the plain language of the statute, which we may not do. *See Brent*, 634 S.W.3d at 913. The statute provides that a defendant who was "convicted of . . . a felony described by Article 42A.054" is not eligible for early termination of his community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.701(g)(3). Ahualli suggests an interpretation of the statute that only a defendant who was convicted of "a felony described in Article 42A.054*(a)*" would not be eligible for early termination of his community supervision. The plain language of the statute

16

is unambiguous and does not conform to Ahualli's interpretation. The text of the statute is not limited to just subparagraph (a)—but instead refers to article 42A.054 generally, which also includes subparagraph (b). We cannot revise the statute to limit its application to only subparagraph (a).

Moreover, Ahualli's suggested interpretation would require that we ignore that subsection (b) also describes a class of felony offenses, for which, if convicted, a defendant is not eligible for early termination of their community supervision. Specifically, subsection (b) provides that a defendant is not eligible for early termination of his community supervision where the judgment of conviction includes a deadly weapon finding. *See id.* art. 42A.054(b). Again, the plain language of the statute is unambiguous and does not conform to Ahualli's interpretation.

Finally, to the extent that Ahualli's position is that our interpretation would lead to absurd results, we decline to conclude that applying the plain language of article 42A.701(g)(3) to include felony convictions involving the use or exhibition of a deadly weapon would lead to "absurd consequences." *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

For these reasons, we agree with the State that the trial court's early-termination orders were not authorized by statute. We therefore conclude that the trial court had a ministerial duty to rescind the orders and deny Ahualli's "Motion

17

for Early Termination of Community Supervision" in each of the underlying trial court cause numbers. *See In re State ex rel. Ogg*, 692 S.W.3d 481, 485–86 (Tex. Crim. App. 2024) (per curiam) (granting mandamus relief and concluding trial court had ministerial duty to "undo" order which was not authorized by statute).

Further, because the Legislature has afforded the State limited rights of appeal, which do not include the appeal of an early termination of community supervision, we conclude the State lacks an adequate remedy by appeal to correct the trial court's error. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01 (outlining where State is "entitled to an appeal"); *see also Raley v. State*, 441S.W.3d 647, 650 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) ("The standard for determining appellate jurisdiction in criminal cases is not whether the appeal is precluded by law but whether the appeal is authorized by law.").

**Conclusion**

Because the trial court lacked the statutory authority to grant Ahualli's motions for early termination of community supervision, the State lacks an adequate remedy in law, we grant mandamus relief and direct the trial court perform its ministerial duty to (1) vacate its January 28, 2026 early-termination order discharging Ahualli from community supervision in trial court cause number 1635670, (2) vacate its January 28, 2026 early-termination order discharging Ahualli from community supervision in trial court cause number 1750044, and (3) deny

18

Ahualli's motion for early termination of community supervision in each underlying trial court cause.

We are confident that the trial court will comply with this Court's ruling, and the writ will issue only if the trial court fails to comply within thirty days of the date of this opinion. All pending motions are dismissed as moot.

Susanna Dokupil
Justice

Panel consists of Justices Caughey, Johnson, and Dokupil.

Do not publish. Tᴇx. R. Aᴘᴘ. P. 47.2(b).